Heyl and others, Respondents, vs. Goelz and others, imp., Appellants.

*October 2 — October 22, 1897.*

*Fraudulent sale by guardian: Estoppel: Laches.*

1. The guardian of an insane person, under an order of the county court, sold the land of his ward, but for an inadequate price, and, though nominally to a third party, really for the benefit of himself and his sons, to whom it was shortly afterward conveyed. In an action commenced by the heirs of the ward shortly after his death, *held*, that equity would set aside such sale as fraudulent, and that such heirs were not estopped from maintaining an action for that purpose by laches in not commencing such suit until more than twelve years after the sale, nor by the fact that the guardian had accounted for the price which he received for the land and paid over the same to the administrator of the ward's estate.

2. Such heirs could not be charged with laches in not bringing an action in the lifetime of such ward, because, until his death, they had no interest which could be enforced by action.

Appeal from a judgment of the circuit court for Milwaukee county: D. H. Johnson, Circuit Judge. *Affirmed.*

This is an action to set aside as fraudulent a guardian's sale of twenty acres of real estate belonging to his insane ward. The facts appearing on the trial were, in substance, as follows:

In June, 1852, John J. Gasson purchased twenty acres of land in the town of Lake, in the county of Milwaukee. Prior to November 28, 1860, Gasson became incompetent to manage his business, and so remained until his death. On the date last named the defendant *George Goelz* was appointed general guardian of said incompetent, and undertook the management of his estate, which consisted entirely of the twenty acres of land aforesaid. In December, 1879, *Goelz* made a petition to the circuit court for Milwaukee county, asking for leave to sell said real estate on the ground that the income was insufficient to support the ward, and estimating its value at $2,700. Upon the hearing of that petition *Goelz* was appointed special guardian, and gave the bond as such guardian, and, after a reference duly had, the court authorized the guardian to make a contract for the sale of the premises at a price of not less than $2,700. Thereafter *Goelz* made a contract with a neighbor, *Peter Warnimont*, for the sale of the premises to him for $3,200, one half to be paid in cash, and the balance in a mortgage on the real estate. This sale was confirmed by the court, and the deed was made to *Warnimont*. It appears that *Warnimont* never went into actual possession of the land, but that, shortly after he acquired the record title, he, in form, leased the premises to *John G. Goelz* and *Lorenz Goelz*, sons of said *George Goelz*, who lived with their father; and the father and his sons remained in the joint occupation of the premises after the deed to *Warnimont*, in practically the same manner as before.

On the 22d of April, 1884, *Warnimont* conveyed the premises to the sons, *John G. Goelz* and *Lorenz Goelz*. It is claimed by the plaintiffs that this conveyance was in pursuance of a deliberate scheme, entered into by the guardian and his sons and *Warnimont*, by which title to the premises was to be secured in the *Goelz* family by means of the fraudulent sale to *Warnimont*. On the other hand, it is claimed

that the sale to *Warnimont* was a *bona fide* sale, and that the subsequent sale by *Warnimont* to the sons was also a *bona fide* transaction. After the deed of 1884, *George Goelz* and his sons remained in possession of the land, and worked the same, until February 7, 1891, when *Lorenz Goelz* and *John G. Goelz* divided the land between them, *Lorenz* taking the north half and *John* the south half thereof. In August, 1891, *Lorenz* conveyed to *Herman Goelz* the north half of the land, receiving in pay therefor ten acres of land which had shortly theretofore been deeded by the defendant *George* to *Herman*. In May, 1893, *John G. Goelz* made a contract with the defendant Joyce for the sale of the south half of said lands for the sum of $25,425. It appears that Joyce was an innocent purchaser, and paid $1,000 upon the purchase price without notice of the plaintiffs' claim; and that, after notice thereof, he also paid to *John* $6,000 on the contract, taking a bond to secure himself from loss.

The insane ward, Gasson, never recovered his mind, and remained under guardianship until his death, which occurred June 12, 1892. He had no lineal descendants. He had originally one brother and three sisters. The plaintiffs represent the share of a deceased brother and sister. The defendant *Gertrude Goelz*, wife of *George Goelz*, and the defendant Margaret Gunkel, are the other two sisters, and are still alive. Thus it appears that the plaintiffs are entitled to one half interest in the estate.

After the death of Gasson, an administrator of his estate was appointed, and *George Goelz*, as guardian, made his final account in the county court of Milwaukee county of his guardianship, and turned over to the administrator the balance in his hands, amounting to $2,546.70. In previous accounts he had charged himself with $3,200 as the purchase money of the land sold. So far as appears, this money is still in the hands of the administrator. This action was commenced in November, 1892.

The court found, in substance, that the proceedings for the sale of the land were not instituted in good faith by *George Goelz,* but solely for the purpose of enabling himself and his sons to acquire said land for their own benefit; that he did not endeavor to find a purchaser, but conveyed them to *Warnimont* with a secret understanding that he should hold the premises in trust for his (the guardian's) benefit; that no part of the pretended consideration of $3,200 was in fact paid by *Warnimont,* and that the subsequent conveyance by *Warnimont* to the sons of *George Goelz* was in pursuance of the original fraudulent scheme to get the title of the lands into the *Goelz* family, and that the defendants *John G., Lorenz,* and *Herman Goelz* all knew and participated in the scheme, the money to carry it out being furnished by the father; that the sum of $3,200 was not an adequate price for the premises at the time.

From these facts the court concluded that all of the transactions with reference to this land should be set aside as fraudulent, saving, however, the rights of Joyce under his land contract, and that the plaintiffs were entitled to one half interest in the remaining lands and in the Joyce contract, and that an accounting should be had of the rents and profits of the land during the time the *Goelzes* were in occupation of it. This accounting was had before the court commissioner, and upon such accounting *Goelz* was credited with the $3,200 for which he had accounted to the estate, and a balance of over $16,000 was found due after such credit.

From a judgment in accordance with these findings, all the defendants except Margaret Gunkel and Gilbert S. Joyce appeal.

For the appellants the cause was submitted on separate briefs by *Rogers & Mann,* and *O. T. Williams & Coleman,* attorneys for *George Goelz* and others, and *Toohey & Gilmore,* attorneys for *Lorenz Goelz* and others. They con-

tended, *inter alia*, that the plaintiffs were chargeable with laches in waiting more than twelve years before commencing suit.   They were under no disability and had actual or imputable knowledge of the facts.  Pomeroy, Eq. Jur. § 917; *Rogers v. Van Nortwick*, 87 Wis. 414; *Stern v. Page*, 7 How. Pr. 819; *Wood v. Carpenter*, 101 U. S. 141; *Thomas v. Thomas*, 88 Wis. 88–97; *Hammond v. Hopkins*, 143 U. S. 224, 250. Their right of action accrued when the land was sold by the guardian and the purchaser had gone into possession, and it was barred by the statute of limitations.  *Jones v. Billstein*, 28 Wis. 221.   They are estopped by having procured the appointment of an administrator, and having suffered him to receive from the guardian the amount which he claimed to be the entire proceeds of the ward's estate.  *Shepard v. Peebles*, 38 Wis. 373; *Elwell v. Prescott*, 38 id. 274.

For the respondents there was a brief by *La Boule & Hunt*, and oral argument by *F. S. Hunt*.

WINSLOW, J.   The case, as found by the trial court, was this: A guardian of an insane person sells his ward's real estate for an inadequate price, nominally to a third person, but really to himself under cover of the name of such third person; the guardian making the payment by accounting for the supposed purchase price to the probate court, and causing the title to be conveyed to his sons.   Upon the death of the insane ward some twelve years later, his heirs (or a part of them) bring action to set aside the transaction as fraudulent and void.   That these facts, if established by the evidence, call loudly for the interposition of the powers of a court of equity, and for the setting aside of the entire transaction, cannot be doubted.   Really the only serious questions in the case are questions of fact.   We have carefully read all the testimony, and are unable to say that the findings of fact are not sustained by the evidence.

The claim is now made that the plaintiffs are estopped or

barred by laches, but neither of these claims is tenable. The claim of estoppel is based on the fact that the guardian has accounted for the price at which the land was, in form, sold, and paid over the same to the administrator of the estate of Gasson. These plaintiffs have received nothing, nor is it apparent how they can be estopped by the act of the administrator. Moreover, *Goelz* has been allowed the entire sum accounted for by him in the account stated in this action as an offset to rents and profits of the lands while in his possession. In substance, therefore, he has received back his money.

Gasson could not be charged with laches, because he was insane. The plaintiffs could not be charged with laches until they had some title or interest in the land which they could enforce by action. It is very plain that until the death of Gasson they had no interest in the land, and hence could maintain no action concerning it. They brought this action within a few months after Gasson's death; certainly before it could be reasonably claimed that they had been guilty of laches.

*By the Court.*— Judgment affirmed.